[Civ. No. 15378.   First Dist., Div. One.   Mar. 3, 1953.]

WILLIAM MULLER, Appellant, v. HARRIET E. MARTIN et al., Defendants; W. E. GIRVIN et al., Respondents.

William Muller, in pro. per., for Appellant.

W. P. Caubu for Respondents.

WOOD (Fred B.), J.—Plaintiff William Muller has appealed from an order in a partition suit which awarded a fee of $250 to the referee who conducted the sale of the property of the parties and $250 to defendant W. Knickerbocker as reasonable counsel fees expended or incurred for the common benefit.

In support of his appeal plaintiff claims (1) the order is not supported by any evidence, (2) the fees allowed were excessive, and (3) a counsel fee should have been awarded to plaintiff.

The record is in an unsatisfactory state. Plaintiff chose to present his appeal wholly on a settled statement. He prepared and filed a proposed statement. Defendant Knickerbocker filed amendments thereto. Plaintiff filed objections to the amendments. The trial court ordered these three and certain other documents engrossed as the Statement on Appeal and certified the statement as true and correct. The conflict between these three documents bears principally upon the oral proceedings at the hearing which resulted in the order appealed from. We have plaintiff's and defendant's conflicting accounts of what happened at that hearing but no settlement thereof by the judge who presided at the hearing.

Normally, the failure of the trial court to settle the record properly would require that it be returned to the trial court for settlement. However, it happens that we can use the record in its present state. Careful scrutiny convinces us that even if all differences concerning what happened at the hearing below were resolved in plaintiff's favor, the order appealed from must be affirmed.

The record, viewed in the light most favorable to the plaintiff, discloses the following facts: W. H. Girvin, sole referee in partition, filed his account showing $2,167.64 as the balance remaining in his hands and petitioned the fixing of a reasonable fee for his services and a reasonable sum for attorney fees. On the hearing of that petition, the referee testified: This is a petition for the attorney's fee and referee's

fee in partition; there was a sale of certain lots for $3,800 and an order confirming the sale of this real estate by the referee in partition; there is in the hands of the referee approximately $2,167 for disposal by the court. The judge was informed that the referee had sold the real property, that the sale thereof had been ordered confirmed, and that the accounting thereof was now before the court. The court's attention was called to the fact that each of the tenants in common, as shown by the accounting, had received from the referee all of the purchase money paid by them to the County Treasurer of San Mateo County at a tax sale and at a sale on foreclosure of street bonds by which each of the parties acquired title to the lots, plus interest thereon from the dates of purchase to the date of sale by the referee; and that the profit resulting from the sale, subject to the fee for the referee and the defendant's attorney, was $2,167.64. W. P. Caubu, counsel for defendant Knickerbocker, requested the court to allow him attorney fees and the referee his fees and suggested $250 for each. Plaintiff Muller objected to those amounts, claiming them excessive, aggregating approximately 25 per cent of the net proceeds left after deducting costs, expenses, and initial investments allowed to the parties concerned. The judge indicated approval of the amounts mentioned and disapproval of plaintiff's objection. Plaintiff then moved the court for an allowance for himself. Plaintiff William Muller was substituted for the original plaintiff Bessie Muller in August, 1950, prior to the trial of the action, and thenceforth acted as his own attorney.

The court ordered payment of fees in the amounts mentioned and distribution of the balance of the money in equal shares to the two parties in interest, plaintiff Muller and defendant Knickerbocker.

The following facts which defendant proposed to include in the statement were not questioned by plaintiff, save that in his "objections" he contended that these facts were not mentioned at the hearing either in the form of the testimony of a witness or statements by counsel or parties. Defendant Knickerbocker included in his answer a cross-complaint, setting forth his interest as a tenant in common with plaintiff and praying for partition of the real property. Following a trial of the action on or about December 8, 1950, the filing of written findings having been waived by the parties, a judgment was prepared by defendant's counsel adjudging the existence of a tenancy in common of Muller and Knicker-

bocker and decreeing partition as prayed for by the defendant. W. H. Girvin was named therein as referee in partition, with authority and direction to sell the real estate at private sale and with directions given for the disposition of money including payment of referee's fees and a reasonable sum as attorney's fees. A certified copy of the judgment, prepared by defendant's attorney, was certified and recorded. The referee prepared and caused to be published, as required by law, a notice of sale, at private sale, of the three lots ordered to be sold. A sale of the lots by the referee was returned to the court. A hearing thereon was noticed by the attorney .for defendant. At the hearing, all persons interested being present, the sale by the referee was ordered confirmed. The order confirming such sale was prepared by defendant's counsel. It was filed and a certified copy prepared and recorded. Following the filing of the order confirming the sale a deed by the referee to the purchaser was prepared by defendant's attorney. An accounting and report was thereafter filed by the referee and notice of the filing and of time of hearing thereon was given by the referee. This accounting was verified and contained a true statement of all receipts and disbursements by the referee who in his report requested an allowance to him for his services as referee and for allowance of an attorney's fee.

■ (1) *As to the evidence adduced at the hearing,* it appears from this record that the trial judge had before him the referee's accounting and report of the sale supported by the referee's testimony that he had sold the property for $3,800; that the sale had been confirmed, and that the referee had on hand a balance of $2,167.64. It further appears that by way of refreshing the court's judicial knowledge, the court's attention was called to the fact that each of the tenants in common (the plaintiff and the defendant), as shown by the accounting, had received from the referee all of the purchase price money which they had paid to the county treasurer at a tax sale and at a sale on foreclosure of street bonds, together with interest thereon from the date of each purchase until the date of the referee's sale. That testimony and that information, coupled with the judge's own knowledge of the legal requirements in the conduct of such a sale and the work and responsibility involved upon the part of the referee and the attorney, was sufficient to enable the judge to make a proper determination. ■ In addition, he had judicial knowledge of all of the earlier steps and proceedings in the

action without the need of testimony to bring that information to his attention. (See *Libby* v. *Kipp,* 87 Cal.App. 538, 544-545 [262 P. 68].)

(2) *Were the fees claimed unreasonable in amount?*

■ Considering the value of the property handled by the referee (indicated by its sale price, $3,800) and the work and responsibility ordinarily involved, and the absence of specific evidence on the question, we can not say that the trial court abused its discretion in allowing $250 each for the services of referee and of defendant's counsel.

Plaintiff challenges the reasonableness of those amounts upon the basis of a number of decisions which, according to his computation, approved attorney's fees in varying amounts ranging from 2 per cent to 9 per cent of the value of the property involved. He then adds the referee and counsel fees in our case and applies their sum, $500, to the balance on hand, $2,164, and contrasts the resultant 22 per cent with his yardstick of 2 per cent to 9 per cent.

Plaintiff has mistakenly applied his own yardstick. He should start with the gross value of the property, $3,800, instead of first deducting therefrom the amount of his and the defendant's investment in the property. He should then apply the amount of the counsel fee only, $250, not the combined amounts of the fees of counsel and referee. That would give him slightly in excess of 6 per cent, which is well within his range of 2 to 9 per cent.

In making this analysis of plaintiff's computations, we are not holding that there is any fixed percentage or range of percentages for use as a formula in determining the reasonableness of fees to be paid for services of the type under consideration. The real question is the reasonable worth or value of the services rendered. The ratio that sum bears to the total value of the property involved will naturally vary as the conditions and circumstances attending the partition and sale vary.

■ Plaintiff also argues there was no need to appoint a referee because plaintiff was willing to sell his interest to his cotenant or to place the property with a broker for sale. This argument overlooks the fact that neither the present appeal nor the record before us presents for consideration the propriety or impropriety of conducting the partition by way of sale by referee. That was determined by a judgment previously entered, not involved upon this appeal. Indeed, there

was an intervening order confirming the sale, which order likewise is not involved upon this appeal. We have for review only the order fixing the fee of the referee and awarding costs to the defendant for counsel fees expended or incurred for the common benefit.

■ Plaintiff further claims that defendant's counsel performed no services for the "common benefit" as that term is used in section 796 of the Code of Civil Procedure. In this, plaintiff overlooks the fact that it was defendant Knickerbocker who pleaded and proved the tenancy in common and sought a partition of the property. In effect, therefore, the defendant was in the same relative position as that normally occupied by the plaintiff in a partition suit. Many of the services rendered by the attorney for such a party (the moving party) in a partition suit inure to the benefit of all of the cotenants and, therefore, are for the "common benefit." This was well expressed by our Supreme Court in *Capuccio v. Caire*, 207 Cal. 200 at 207-208 [277 P. 475, 73 A.L.R. 8] in these words: "It will thus be seen that from the inception of an action for partition instituted by any one or more of several cotenants having the right as such and as plaintiffs to institute such an action there is a considerable succession of required procedural details which must be initiated and carried forward by the plaintiff or plaintiffs in the action and which at the final analysis inure to the common benefit of those parties to the action who shall be found to be respectively entitled to a share of the lands to be thus divided."

(3) *Should the trial court also have awarded counsel fees to plaintiff?*

■ Plaintiff claims that the trial court erred in not awarding him counsel fees under section 796 of the Code of Civil Procedure in view of the fact that he acted as his own attorney.

We have been unable to find a sound basis for such a claim. Section 796 of the code declares that "the *cost of partition*, including reasonable counsel fees, *expended* by the plaintiff or either of the defendants, for the *common benefit*, fees of referees, and other disbursements, must be paid by the parties respectively entitled to share in the lands divided, in proportion to their respective interest therein, and may be included and specified in the judgment." (Emphasis added.) Prior to the judgment which defined the rights of the parties and ordered partition, plaintiff, as we have seen, did not stand in the position of the plaintiff in a partition suit and

therefore is not in the same position as is defendant Knickerbocker to claim that legal services performed by or for him prior to judgment were for the "common benefit." In addition, it does not appear that after the appointment of the referee plaintiff performed any legal services that under any theory could be characterized as for the "common benefit," nor does plaintiff claim that he "expended" any money or incurred any obligation for his own services in the action. Under similar statutes in Illinois and Florida the courts have held that a party who represents himself and performs legal services that are for the comomn benefit of the cotenants is not entitled to contributions for such services from the other parties to the action. (See *Cheney* v. *Ricks*, 168 Ill. 533 [48 N.E. 75], and *Girtman* v. *Starbuck*, 48 Fla. 265 [37 So. 731].) We interpret our statute in like fashion. The following statement in *Chavez* v. *Scully*, 62 Cal.App. 6 [216 P. 46] expresses our view: "It will be observed, however, that the section [796 of the Code of Civ. Proc.] provides only that counsel fees may be included in the costs of partition expended by either plaintiff or defendant for the common benefit of all the parties to the action, and that they must be paid by the parties respectively entitled to share in the land divided. The fact that counsel fees are placed in the same category with other costs of suit expended by the parties, would indicate that this provision of the code was made for the protection and reimbursement of the parties, and then only after such costs and attorneys' fees had been paid, or at least incurred." (Pp. 7-8.)

The order appealed from is affirmed.

Peters, P. J., and Bray, J., concurred.